JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant-father W.M.B. ("father") appeals from an order by the juvenile division of the common pleas court which granted permanent custody of his three children to the Cuyahoga County Department of Children and Family Services (the "agency"). His sole assignment of error is directed to the adjudicatory phase of the proceedings and complains that the court abused its discretion by finding the children neglected and abused because none of the evidence heard at the adjudicatory hearing pertained to him.[1]
 I {¶ 2} Because the father's sole assignment of error relates only to the adjudicatory finding relating to neglect and abuse, we consider only those facts adduced at the adjudicatory hearing. This appeal pertains to the second agency complaint involving mother G.T.'s six children. The mother's former husband fathered two girls and one boy. The appellant-father is the natural parent of two boys (W.B. and C.B.) and one girl (N.B.). In the first complaint, the agency alleged that the children had been neglected and abused because the parents had been *Page 4 
physically abusive and the mother and father had permitted the children to be sexually abused by a cousin who lived with them. The mother entered an admission that the children were neglected, and the court granted permanent custody of the children to the agency. This court reversed that disposition, however, finding that the mother's admission of neglect had been infirm because the court failed to advise her of her rights under Juv.R. 29(D). See In re A.C., 160 Ohio App.3d 457,2005-Ohio-1742, at TJ6-10.
 {¶ 3} The agency refiled the complaint, alleging that the children had been sexually abused by a cousin who had been residing in the mother's house; that the mother knew about the sexual abuse but did not report it; and that after the cousin had stopped residing in her house, she and the children moved into the same house where the cousin subsequently moved. Paragraphs 6 and 7 of the complaint alleged that the father had (1) demonstrated a lack of commitment toward the children by his failure to provide care or support for the children, and his failure to visit or communicate with the children when able to do so and (2) engaged in acts of verbal and domestic violence with the mother and that those acts placed the children at risk of serious physical and emotional harm.
 {¶ 4} An agency intake worker was the sole witness at the adjudicatory hearing. She said that the agency received a referral through its KIDS hotline that "the girls" had been sexually abused by a cousin who temporarily lived with them and that the mother and father knew about the sexual abuse but did not stop it. The *Page 5 
mother told the father not to call the police because she did not want social services to become involved. By the time the agency received the referral, the cousin had moved out. The intake worker testified that the mother moved in with her sister and the cousin who perpetrated the abuse. During the investigation, the intake worker learned that the mother and father were getting divorced and that there had been incidents of domestic violence between them. It appeared that the father had forced the mother and children to leave the house and seek refuge with the mother's sister. The intake worker testified that there had been an incident of sexual abuse between the mother and N.B. after the family moved in with the mother's sister.
 {¶ 5} At the conclusion of the adjudicatory hearing, the court stated that "I agree that this certainly is not the strongest case that's ever been presented and in fact I wonder why the Department couldn't have done a little better job if there were such horrific acts occurring." The court concluded, however, that there was clear and convincing evidence to show that the children were abused and neglected. The court found that the allegations made against the father in paragraphs 6 and 7 of the complaint "have not been proven" and dismissed those counts.
 {¶ 6} After a dispositional hearing, the court granted the agency permanent custody of the children, finding that the parents had failed to remedy the problems *Page 6 
that caused the initial removal of the children and that it would not be in the best interest of the children to return to their parents.[2]
 II {¶ 7} The father's sole assignment of error is that the court abused its discretion by finding that his three children, W.B., C.B., and N.B. were abused and neglected. He claims that there was no evidence that any of his children were sexually abused, nor were there any allegations in the complaint that support a finding that he abused or neglected them.
 A {¶ 8} Hearings involving the termination of parental rights are bifurcated into separate adjudicatory and dispositional phases. See R.C.2151.35, Juv.R. 29 and 34. In the adjudicatory phase, the court determines whether a child is "abused, neglected or dependent * * *." See R.C. 2151.35(B)(1). The trial court must determine whether the children were neglected or dependent as of the date or dates alleged in the complaint, not whether the children were neglected or dependent as of the date of the adjudicatory hearing. R.C. 2151.23(A)(1).
 {¶ 9} R.C. 2151.031 does not require a finding of "fault" by either parent during the adjudicatory stage. In In re Pitts (1987),38 Ohio App.3d 1, 5, the court stated: *Page 7 
 {¶ 10} "[R.C. 2151.031] makes no reference to parental fault. All that is necessary is that the child be a victim, regardless of who is responsible for the abuse. The focus is upon harm to the child, not upon parental or custodial blame-worthiness. It has been argued that such a focus will enhance family autonomy. See Areen, Intervention Between Parent and Child: A Reappraisal of the State's Role in Child Neglect and Abuse Cases (1975), 63 Geo. L.J. 887, 917-920."
 {¶ 11} Determinations made during the adjudicatory phase must be supported by clear and convincing evidence. R.C. 2151.35(A). "Clear and convincing" evidence is that which produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469. As with other questions of evidence, we cannot reverse a factual determination if it is supported by competent, credible evidence. In re S. (1995),102 Ohio App.3d 338, 344-345.
 B {¶ 12} As applicable to this appeal, R.C. 2151.031 defines an "abused child" to include any child who:
 {¶ 13} "(A) Is the victim of `sexual activity' as defined under Chapter 2907 of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child; *Page 8 
 {¶ 14} "(B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child; * * *."
 1 {¶ 15} The social worker did not name or mention W.B. or C.B. in her testimony. There is no evidence of any kind to show that these two children were the victims of sexual activity.
 {¶ 16} The agency offered some testimony regarding N.B. and sexual activity, but it did not rise to the level of clear and convincing evidence to support the court's finding that N.B. had been abused. During questioning about circumstances that occurred after the mother moved the children in with her sister, the intake worker was asked "did sex abuse come to your attention, any incident of sex abuse, after the children came to Cleveland [to live with the mother's sister] * * *?" The intake worker answered, "[t]here was an incident between Mom and the youngest child, [N.B.]." The questioning on this point ended after this answer. We conclude that this testimony does not rise to the level of clear and convincing evidence that N.B. had been sexually abused for purposes of R.C. 2151.031(A). This testimony was vague and offered no specifics of any kind from which the court could have found that N.B. had been sexually abused.
 {¶ 17} In another part of her testimony, the intake worker again mentioned N.B. by name when referencing a conversation she had with N.B. However, when the *Page 9 
intake worker started to relate the substance of her conversation with N.B., the court sustained an objection on hearsay grounds. The agency then shifted the topic of examination and the intake worker did not mention N.B.'s name. Again, we conclude that this brief mention of N.B.'s name, without any specific reference to acts of sexual activity could not constitute clear and convincing evidence of abuse.
 2 {¶ 18} We do conclude, however, that the agency presented clear and convincing evidence to show that the children were placed at a substantial risk of harm such that the parents would have endangered the children under R.C. 2151.031(B). Endangering children is defined in R.C.2919.22(A), which states that no parent "shall create a substantial risk to the health or safety of the child by violating a duty of care, protection, or support." The term "substantial risk" is defined by R.C.2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."
 {¶ 19} When a parent knows that a child is being sexually assaulted by another member of the household, but fails to remove either the child or the perpetrator from the household, that parent has created a substantial risk to the safety of the child. See State v. Wardlow
(1985), 20 Ohio App.3d 1, 3-4. The parents knowingly permitted a sexual abuser to remain in the household, even though he had abused their children with devasting effect to the family unit. This fact alone could justify a *Page 10 
finding that there was a strong possibility that these three children would also be sexually assaulted.
 {¶ 20} The father's role in causing the problem was undisputed. Testimony showed he not only knew the abuse had occurred, but when he "threw" the mother and children out of the house, they had no other option but to go to the mother's sister's house, where the abusive cousin lived. The father's actions demonstrated a callous disregard for the health and safety of the children.
 C {¶ 21} As applicable to this appeal, R.C. 2151.03(A)(2) defines "neglected child" as any child as one "who lacks adequate parental care because of the faults or habits of the child's parents * * *[.]"
 {¶ 22} Although the agency presented no evidence to show that the three children at issue were sexually abused, it did present evidence to show that other members of the household were sexually abused by the cousin and that the parents knew about it but did nothing to stop it. Despite knowing that the cousin had abused her children, the mother moved her children into a residence in which the cousin also resided. The court heard testimony that the father had been home when the abuse occurred. Finally, testimony showed that the mother told the father not to report the abuse to the police in order to prevent the agency's intervention.
 {¶ 23} A parent who not only actively fails to report acts of sexual abuse committed against her children by a known perpetrator, but then voluntarily moves *Page 11 
her children into a residence in which that perpetrator lives, creates a substantial risk to the health and safety of the children and violates a duty of care and protection for those children. This duty extended to the three children at issue even though the agency offered no evidence at the hearing to show that they were sexually abused. The cousin posed a risk to all of the children in the household. His prior actions poisoned the home environment for all the children. The mother's refusal to deal with the problem constituted clear and convincing evidence of neglect. See, e.g., In re Marshall (Oct. 22, 1987), Putnam App. No. 12-85-8; In re Gail (C.P. 1967), 12 Ohio Misc. 251, 253. The father was equally culpable as he likewise knew the abuse had occurred and not only failed to stop or prevent it, he threw his own children out of their house and gave them no choice but to move in with their abuser.
 {¶ 24} We conclude that the court did not err by finding that W.B., C.B., and N.B. were neglected. The assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas — Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
COLLEEN CONWAY COONEY, P.J., and MARY EILEEN KILBANE, J., CONCUR.
[1] The agency argues that this appeal is not properly before us because the father's notice of appeal contains only the dispositional order granting permanent custody of the children to the agency, not the adjudicatory order which found the children neglected. The agency has shown no prejudice from the father's failure to attach the journal entry relating to the neglect adjudication, so we exercise our discretion to hear this appeal. See In re A.C., 160 Ohio App.3d 457, 2005-Ohio-1742, at ¶ 17-21. But see In re K.M., Butler App. No. CA2004-02-052, 2004-Ohio-4152 (having failed to timely appeal from the dependency adjudication which resulted in a grant of temporary custody, an appellant cannot raise on appeal the issue of the dependency adjudication).
[2] The mother has not appealed from either the adjudicatory or dispositional rulings. *Page 1