[Cite as *In re D.M.*, 2014-Ohio-2160.]


COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|                                    |   | JUDGES:                    |
|------------------------------------|---|----------------------------|
| IN THE MATTER OF: D.M. and         | : | Hon. W. Scott Gwin, P.J.   |
| A.D.                               | : | Hon. John W. Wise, J.      |
|                                    | : | Hon. Craig R. Baldwin, J.  |
|                                    | : |                            |
|                                    | : |                            |
|                                    | : | Case No. 2013CA00225       |
|                                    | : |                            |
|                                    | : |                            |
|                                    | : | O P I N I O N              |


CHARACTER OF PROCEEDING:        Civil appeal from the Stark County Court of
                                Common Pleas, Juvenile Division, Case
                                No. 2013JCV00456


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         May 19, 2014


APPEARANCES:

For-Appellee                            For Appellant

HOLLY DAVIES                            AARON KOVALCHIK
JAMES PHILLIPS, JR.                     116 Cleveland Avenue N.W.
300 Market Avenue North                 Suite 808
Canton, OH  44702                       Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant appeals the October 15, 2013 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, overruling her objections to the magistrate's decision and adopting the July 24, 2013 magistrate's decision finding D.M. abused and A.D. dependent.

*Facts & Procedural History*

{¶2} D.M. was born on February 17, 1996 and is the biological child of appellant Sherry Lee ("Mother") and Craig Mihal ("Mihal"). A.D. was born on January 13, 1999 and is the biological child of Mother and Gene Derheimer ("Derheimer"). On May 3, 2013, Stark County Department of Job and Family Services ("SCDJFS") filed a complaint alleging D.M. and A.D. were abused, dependent, or neglected children and seeking an order of temporary custody to Derheimer with protective supervision to SCDJFS. The complaint alleged, in part, that Mother and the children had a prior history with Carroll County Children's Services. Further, that there were concerns about Mother's substance abuse and mental health issues. Specifically, the complaint alleged Mother violated a Carroll County court order by trying to have D.M. placed on mental health medication, that Mother abused marijuana, and that domestic violence occurred in the home.

{¶3} In an order dated May 3, 2013, the trial court ordered Mother to complete a parenting assessment at Northeast Behavioral Health, a drug and alcohol assessment at Quest, to follow through with any treatment recommendations made at the assessments, and ordered any visitation with Mother and the children be supervised through SCDJFS.

{¶4}    A contested evidentiary hearing was held on July 24, 2013 to determine whether D.M. and A.D. were abused, neglected, and/or dependent children. Stephanie Prater ("Prater"), an intake caseworker for SCDJFS, testified the agency has concerns that Mother tried to put D.M. on medication against a Carroll County court order, about Mother's mental health issues, and domestic violence issues between Mother and D.M. Prater examined the records from Carroll County Department of Job and Family Services and determined there was a case opened in 2010 due to mental health issues of Mother and the children, marijuana use by Mother, and ongoing issues with domestic violence reports in the home. Prater stated D.M. did not have the mental health diagnoses Mother reported he had. When Prater spoke with Mother, Mother admitted she took D.M. to the doctor in violation of an order out of Carroll County. The doctor declined to provide D.M. with medication because he was a new patient. Prater independently confirmed the Carroll County order existed and also confirmed Mother took D.M. to the doctor. Mother also told Prater about ongoing domestic violence issues in the home. When Prater first requested Mother be tested for substance abuse, Mother was positive for marijuana. However, Prater testified Mother recently screened negative for marijuana. Prater visited Mother's home and had no concerns about the physical condition of the home.

{¶5}    Prater testified D.M. had been charged with domestic violence against Mother in Carroll County, which was reduced to disorderly conduct. When Prater spoke with the children, both children reported concerns with living with Mother. A.D. told Prater he was afraid to live with Mother. A.D. confirmed to Prater there were domestic violence issues between Mother and D.M. and also domestic violence issues between

Mother and a male friend named Jimmy Cline ("Cline"). D.M. also told Prater there was domestic violence between Mother and Cline.

{¶6} When asked whether Prater had concerns about her interview with Mother, Prater testified she was concerned that Mother, during the interview, constantly referred to D.M. as psychotic, an abuser, and a liar. Prater stated Mother agreed to a safety plan and signed the safety plan. However, after Mother signed the safety plan, D.M. informed Prater that Mother was attempting to pick him up, in violation of the plan. Prater also expressed concern about Mother's ongoing pattern of trying to label D.M. as mentally ill. Prater concluded Mother cannot safely care for the children and both A.D. and D.M. were at risk of serious mental, physical, or emotional harm if they remained with Mother. Prater asked the trial court to find D.M. and A.D. dependent, neglected, and abused as to Mother.

{¶7} Wendy Bogguss ("Bogguss"), Chief Probation Officer at Carroll County Juvenile Court, testified D.M. had been on and off probation since 2010. Bogguss stated Mother had an ongoing desire to medicate D.M. Bogguss testified D.M. was respectful to the Carroll County Juvenile Court, she had no issues with him while he was on probation, and the only issue the probation department had with the family was Mother telling them D.M. needed medication and was mentally ill.

{¶8} Barbara Malavite ("Malavite"), a therapist at Pathway Caring for Children, testified D.M. was a client of Pathway's for approximately one year and D.M. improved when he was placed in Derheimer's home. Malavite stated she had concerns with Mother's behavior because Mother feels D.M. has mental issues which the professionals at Pathway have not seen in D.M. Mother told the professionals at

Pathway that D.M. had schizophrenia and Mother wanted him medicated, but Malavite did not see a reason to medicate D.M. and saw no signs of any mental health disorder in D.M.  Malavite evaluated D.M. during counseling and determined he had no mental issues, but did diagnose him with Behavioral Disorder.  Though Malavite told Mother D.M. did not need medicated, Mother continued to say D.M. needed medicated. Malavite testified a plan was put in place for D.M. to remove himself from situations when there is conflict.  However, Mother did not allow D.M. to follow the plan because she would contact the police when D.M. removed himself from a situation.  In Malavite's professional opinion, D.M.'s behavioral issues and conflict with Mother is rooted in issues about medication because D.M. does not want to be medicated and cannot function when he is medicated.

{¶9}   All parties stipulated that Dr. Aimee Thomas ("Thomas"), a licensed psychologist at Northeast Ohio Behavioral Health, was an expert witness in psychology for purposes of the hearing.  Thomas completed a parenting evaluation of Mother in July of 2013 and met with her for two sessions of approximately one hour each. Thomas did not meet or observe D.M.  Thomas also reviewed SCDJFS's information related to the evaluation of D.M. in 2010 and 2012, neither of which identified any serious mental issues of D.M or any of the mental conditions such as severe depression, bipolar disorder, and Tourette syndrome like Mother said he had.  Mother provided Thomas with some information about D.M.'s psychological exams since 2005, though the information Mother provided was not complete and Mother would not sign a release for the balance of the information when requested by Thomas.  Thomas stated Mother was fixated on D.M. and his issues and Mother told her D.M. was very violent

with severe emotional problems.  Mother told Thomas she smoked marijuana in the past, but had stopped recently.  Thomas testified Mother had a need to control people and wanted to be needed by other people.

{¶10} Based on her evaluation and psychological testing, Thomas diagnosed Mother with the following: Fictitious Disorder by Proxy or Munchausen by Proxy, cannabis abuse, and Borderline Personality Disorder.  Thomas further stated Mother was co-dependent, controlling, and manipulative.  Thomas testified Munchausen by Proxy is typically diagnosed with collateral reports because the patient does not acknowledge they are harming a child or fabricating disorders.  Thus, Thomas had to look for inconsistencies between what Mother reported was wrong with D.M. and other documentation or evaluations of D.M.  Features of Munchausen by Proxy include fabrication of physical or psychological symptoms of someone in the individual's care.  Thomas testified there is no treatment for the condition.  Thomas stated that when a child has a mental health condition, the primary source of information a professional relies on to diagnose such issues is information from the child's caregiver.  As the child gets older and starts to relay information to the professional him or herself, the reports are inconsistent with the previous information provided by the parent.  Thomas testified she believes that is what happened in this case with Mother and D.M.  Thomas stated that Mother's behavior with regards to D.M. is emotional abuse.  When asked about Mother's ability to care for A.D., Thomas testified that if A.D. is in Mother's care and Mother does not have access to D.M., Mother will likely shift the fabrication of symptoms to A.D.

{¶11} The Guardian Ad Litem, Holly Davies ("Davies") submitted a report and recommendation on July 17, 2013. Davies concluded both D.M. and A.D. should be placed in the legal custody of Derheimer and D.M. should have no contact with Mother until recommended by D.M.'s counselor. Finally, SCDJFS admitted the court order from Carroll County and Mother's parenting evaluation as exhibits without any objection from any party.

{¶12} Mother did not testify, call any witnesses, or present any evidence. The trial court proceeded to conduct a disposition hearing, where Derrick Mayle ("Mayle"), the ongoing caseworker from SCDJFS, testified D.M. and A.D. were doing well at Derheimer's home. Mayle stated it was in the best interest of the children to award temporary custody of A.D. and D.M. to Derheimer with protective supervision to SCDJFS.

{¶13} On July 25, 2013, the magistrate issued a judgment entry finding that D.M. is an abused child and A.D. is a dependent child. Mother filed objections to the magistrate's decision on August 5, 2013 and argued D.M. is not abused and A.D. is not dependent. The trial court held an oral hearing on Mother's objections on October 9, 2013. On October 15, 2013, the trial court issued a judgment entry overruling Mother's objections and adopting the magistrate's decision of July 24, 2013. Mother filed an appeal of the trial court's October 15, 2013 judgment entry and raises the following assignments of error on appeal:

{¶14} "I. THE JUDGMENT OF THE TRIAL COURT THAT A.D. WAS A DEPENDENT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶15} "II. THE JUDGMENT OF THE TRIAL COURT THAT D.M. WAS AN ABUSED CHILD WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## I. & II.

{¶16} Pursuant to R.C. 2151.35(A), a trial court must find that a child is an abused, neglected, or dependent child by clear and convincing evidence. *In the Matter of F.M. and M.M.*, 5th Dist. Tuscarawas No. 2011 AP 07 0029, 2012-Ohio-1082. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

*Abused Finding as to D.M.*

{¶17} Mother argues the trial court erred in finding D.M. an abused child. Specifically, Mother argues she was never charged with domestic violence against D.M. and she was the victim of D.M. Further, that Dr. Thomas' opinion was not credible because she did not personally examine D.M. We disagree with Mother.

{¶18} R.C. 2151.031 provides, in pertinent part,

As used in this chapter, an "abused child" includes any child

who * * *

(C) Exhibits evidence of any physical or mental injury or

death, inflicted other than by accidental means, or any injury

or death which is at variance with the history given of it. * * *

(D) Because of the acts of his parents, guardian, or

custodian, suffers physical or mental injury that harms or

threatens to harm the child's health or welfare.

{¶19} We find competent and credible evidence exists in this case to support the trial court's conclusion that D.M. is an abused child pursuant to the statute. Prater testified Mother tried to put D.M. on medication in violation of a Carroll County court order and Mother admitted to Prater she took D.M. to the doctor in violation of the court order. Prater was concerned Mother constantly referred to D.M. as a liar, psychotic, and abusive. While Mother signed a safety plan, she quickly attempted to violate the plan. Prater concluded Mother could not safely care for D.M. and he is at risk of serious mental, physical, and emotional harm if he continues to stay with Mother. Bogguss testified Mother had an ongoing desire to medicate D.M. Malavite stated D.M. improved

in Derheimer's home and Mother told her he had serious mental health issues and wanted him medicated, but Malavite saw no signs of a mental disorder in D.M. Malavite also testified Mother would not follow through with the plan put in place to let D.M. remove himself from conflict. Malavite concluded any conflict between D.M. and Mother is rooted in Mother's continual attempts to have D.M. medicated and D.M.'s desire not to be medicated because he cannot function when medicated.

{¶20} Thomas, stipulated by all parties to be an expert in psychology, testified that while she did not meet or observe D.M., she did meet with Mother and reviewed records. She stated Mother's interview and the records are consistent with the theme that is typical of a patient with Munchausen's by Proxy because when a child gets older and can report their own symptoms to medical professionals, these reports are inconsistent with previous information provided by the caregiver with Munchausen's by Proxy. Further, that the disease is typically diagnosed through collateral reports and that is how Thomas made the diagnosis in this case. Though Mother argues Thomas did not completely review the records, it was Mother's failure to sign a release for the records that prevented Thomas from reviewing them. Thomas testified that she did review the portions of the records provided to her by Mother, but that some of the records were incomplete and she could not obtain the full records because Mother refused to sign a release for the remainder of the records. Thomas testified that Mother's behavior was emotional abuse of D.M. Accordingly, competent and credible evidence exists to find D.M. is an abused child pursuant to R.C. 2151.031(C) and (D).

*Dependent Finding as to A.D.*

{¶21}  Mother argues the trial court erred in finding A.D. to be a dependent child. Specifically, Mother contends there was no conflict between A.D. and Mother and that D.M. was the perpetrator of domestic violence against her and A.D.  Further, that she tested negative for marijuana, there were no physical concerns with her home, and she was cooperating with services.  We disagree with Mother's argument that the trial court erred in finding A.D. a dependent child.

{¶22}  R.C. 2151.04 provides, in relevant part, that a dependent child means any child:

> (C) Whose condition or environment is such as to warrant
>
> the state, in the interests of the child, in assuming the child's
>
> guardianship;
>
> (D) To whom both of the following apply:
>
> (1) The child is residing in a household in which a
>
> parent, guardian, or custodian or other member of the
>
> household committed an act that was the basis for an
>
> adjudication that a sibling of the child or any other child who
>
> resides in the household is an abused, neglected, or
>
> dependent child.
>
> (2) Because of the circumstances surrounding the
>
> abuse, neglect, or dependency of  the sibling or other child
>
> and the other conditions in the household of the child, the

child is in danger of being abused or neglected by that

parent, guardian, or custodian or  member of the household.

{¶23} A finding of dependency under R.C. 2151.04 must be grounded on whether the child is receiving proper care and support; the focus is on the condition of the child.  *In re Bibb*, 70 Ohio App.2d 117, 120, 435 N.E.2d 96 (1st. Dist. 1980).  "The determination that a child is dependent requires no showing of fault on the parent's part."  *In re Bolser*, 12th Dist. Butler Nos. CA99-02-038, CA99-03-048, 2000 WL 146026 (Jan. 31, 2000).  However, a court may consider a parent's conduct insofar as it forms part of the child's environment.  *In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, 843 N.E.2d 211 (6th Dist.).  Further, in issues of dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm."  *In re Burchfield*, 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist. 1988).

{¶24}  We find competent and credible evidence exists in this case to support the conclusion that A.D. is a dependent child pursuant to R.C. 2151.04(C), a child whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship.  A.D. told Prater he was afraid to live with Mother and that Mother had domestic violence issues with both D.M. and another male friend named Cline.  Though Prater testified Mother had recently tested negative for marijuana and she did not have any physical concerns with the home, Prater also stated Mother quickly attempted to violate the safety plan put in place.  Prater concluded that Mother cannot safely care for A.D. and he is at risk of serious mental, physical, and emotional harm if he stays with her.  Thomas, stipulated to being an expert in psychology by both

parties, diagnosed Mother with Munchausen's by Proxy, for which there is no treatment. Thomas testified that if Mother does not have access to D.M. but does live with A.D., she will likely shift the fabrication of symptoms to A.D. Finally, the guardian ad litem recommended A.D. be placed in Derheimer's custody with protective supervision by SCDJFS.

{¶25} In addition, A.D. is a child residing in a household in which Mother committed acts that were the basis for an adjudication that D.M., A.D.'s sibling, is an abused child, as discussed above. Thomas stated that, because of the circumstances surrounding Mother's abuse of D.M. and D.M.'s removal from the home, A.D. is in danger of being abused as Mother will likely shift the fabrication of symptoms to A.D. Accordingly, competent and credible evidence exists to find A.D. is a dependent child pursuant to R.C. 2151.04(D)(1) and (2).

{¶26} Based on the foregoing, we find the trial court did not err in finding D.M. abused and in finding A.D. dependent. Appellant's first and second assignments of error are overruled. The October 15, 2013 judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur